# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAY LEE VAUGHN, Sr., <br><br> Plaintiff, <br><br> v. <br><br> WEGMAN, <br><br> Defendant. | **Case No. 1:15-cv-01902-LJO-JLT (PC)** <br><br> **FINDINGS AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMMARY JUDGMENT** <br><br> **(Doc. 50)** <br><br> **OBJECTIONS DUE WITHIN 21 DAYS** |

Plaintiff proceeds on claims that Defendant denied him participation in the Jewish Kosher Program and Jewish services at Kern Valley State Prison. Defendant contends she is entitled to summary judgment as she did not have authority to approve or deny a Jewish Kosher diet for Plaintiff or regulate the religious services list, she did not discriminate against Plaintiff, and that Plaintiff's injunctive relief request was rendered moot on his transfer to another facility. (Doc. 50.) Plaintiff filed an opposition,[1] (Doc. 65), and Defendant filed a reply (Doc. 67). For the reasons discussed below, the Court finds that Defendant's motion establishes that no genuine issue of material fact exists and her motion should be **GRANTED**.

---

[1] Plaintiff was provided with timely notice of the requirements for opposing a motion for summary judgment both with Defendant's motion and in an order filed on March 28, 2018. *Woods v. Carey*, Nos. 09-15548, 09-16113, 2012 WL 2626912 (9th Cir. Jul. 6, 2012), *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003), *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

1

I.     **Plaintiff's Claims**

Plaintiff's first claim is for deprivation of a Kosher diet. (Doc. 12, FAC, pp. 3-4.) Under this claim, Plaintiff alleges that upon arrival at KVSP, his previously approved 3030 Kosher meal form was sent to Defendant who "started the process." Since there is no Rabbi at KVSP, Defendant sent Chaplain Bowman[2] to interview Plaintiff. Plaintiff alleges that Bowman saw that Plaintiff is a Black-Hebrew-Jewish inmate and refused to approve his Kosher meal request -- despite 20 years of prior approval. Defendant thereafter sent Plaintiff a stamped signed memorandum denying his request. Plaintiff alleges that, based on CDCR rules and regulations, he only needs to be approved once by a Rabbi. Plaintiff has not been interviewed by a Rabbi since being at KVSP, but he alleges that inmates are only required to be approved once and the CDCR practice is to honor the prior approval. Plaintiff alleges there are many inmates that have been approved without a Rabbi at KVSP.

Plaintiff's second claim is for denial of access to Jewish services. (Doc. 12, FAC, pp. 4-5.) Under this claim, Plaintiff alleges that he made several requests to be allowed to attend Jewish services, but that Chaplain Bowman denied him every time, or simply removed Plaintiff's name from the list. Plaintiff alleges that Defendant took "the matter upon herself to regulate the religious services list when this is not her job" and that she has even placed Plaintiff "on other list [sic] for pure amusement and manipulation." Plaintiff also alleges that these acts denied him "the Pass Over" which he asserts is "the most important cleansing and fasting part" of his religion. Plaintiff alleges he has been "forced to eat only the peanut butter and jelly items mostly."

Plaintiff seeks injunctive relief to be transferred to a prison that will accommodate his Jewish Kosher meal needs, or that he be able to receive Jewish Kosher meals at KVSP, and that he be reimbursed for denied past Kosher meals at KVSP. These allegations were found to state a cognizable claim for deprivation of Plaintiff's free exercise rights under the First Amendment; under RLUIPA for injunctive relief; and for violation of Plaintiff's rights to equal protection under the Fourteenth Amendment. (Doc. 13, Screen F&R; Doc. 15, O Adopt.)

---

[2] Chaplain Bowman was named as a Defendant, but has been dismissed. (Docs. 49, 55.)

**II.     Summary Judgment Standard**

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. U.S.,* 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.,* 818 F.2d 1422, 1436 (9th Cir. 1987). The Court determines only whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a *pro se* prisoner. *Thomas v. Ponder*, 611 F3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim. Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . .") (internal quotation marks and citation omitted). The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F.Supp.2d 1192, 1200 (S.D. Cal. 1998).

Each party's position must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo County, Ariz.,* 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and, in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. *In re Oracle Corp.*

*Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp.*, 627 F.3d at 387 (citing *Celotex Corp.*, 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, *Soremekun v. Thrifty Payless Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), *cert. denied*, 132 S.Ct. 1566 (2012). Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

**III.    Discussion and Analysis**

    **A.    Defendant's Undisputed Statements of Fact[3]**

Defendant's evidence shows that at all times relevant to the First Amended Complaint, Plaintiff was a state prisoner incarcerated at KVSP in Delano, California, within the custody of the California Department of Corrections and Rehabilitation (CDCR). (DUF[4] No. 1.) At all times relevant to the FAC, Defendant was employed as the Community Resources Manager at KVSP.

---

[3] Disputes of fact shown by Plaintiff's evidence are delineated in the discussion of his opposition.
[4] "DUF" refers to Defendants' Statement of Undisputed Facts. All references to pagination of specific documents pertain to those as indicated on the upper-right corners via the CM/ECF electronic court docketing system.

(DUF No. 2.)

Plaintiff filed the operative complaint in this action on May 2, 2016, alleging Defendant violated his Constitutional rights under 42 U.S.C. § 1983. (DUF No. 3.) Plaintiff alleged that Defendant denied him the right to Kosher meals, and Defendant regulated the religious services' list by placing Plaintiff on the "other list" for pure amusement, which also denied Plaintiff the ability to participate in Passover. (DUF No. 5.) Along with monetary compensation, Plaintiff seeks injunctive relief in the form of enrollment in the JKDP or transfer to an institution that would accommodate his Kosher meal request. (DUF No. 6.)

Though Plaintiff has made various allegations against Defendant, Plaintiff never met Defendant. (DUF No. 7.) Plaintiff never witnessed Defendant deny him entry into the JKDP, or remove his name from any religious services' list. (DUF No. 8.) Plaintiff has even admitted he does not believe Defendant denied him entry into the JKDP. (DUF No. 9.)

At all times relevant to this lawsuit, the JKDP was referred to in Title 15 as the "Jewish Kosher Diet," and only Jewish inmates could participate in the JKDP, "as determined by a Jewish Chaplain." (DUF No. 10.) When there was no Jewish Chaplain at KVSP, KVSP utilized the services of the neighboring institutions' Jewish Chaplain, or the CDCR's Department of Adult Institutions' Jewish Chaplain, Rabbi Paul Shleffar, to oversee entrance into the JKDP. (DUF No. 11.) Defendant herself did not have the authority to admit or deny any inmate into the JKDP. (DUF No. 10.)

On or around April 18, 2014, Plaintiff submitted a CDCR 3030 Religious Diet Request ("Form 3030") for the JKDP at KVSP, which was denied by Rabbi Shleffar on or around June 4, 2014. (DUF No. 12.) On June 12, 2014, Rabbi Shleffar signed the Response-Religious Diet Request form denying Mr. Vaughn's request for the JKDP to him. (DUF No. 13.) Defendant merely relayed Rabbi Shleffar's decision to Plaintiff; she did not deny him entry into the JKDP. (DUF Nos. 15, 16.) From October 13, 2017 to his transfer from KVSP on or around February 25, 2018, Plaintiff had been enrolled in the JKDP. (DUF No. 20.)

With respect to religious services, Defendant does not regulate any religious services attendance lists. (DUF No. 21.) Chaplains on each yard are responsible for organizing,

scheduling, and conducting worship services and religious programs appropriate to their faith and maintained sign-in lists. (DUF No. 22.) Defendant never denied Plaintiff the ability to attend Jewish services, or placed or removed his name from any list. (DUF No. 25.) Plaintiff is no longer housed at KVSP, and there is no reasonable expectation that Plaintiff will return to KVSP. (DUF Nos. 28. 29.)

### B. First Amendment -- Free Exercise

The First Amendment is applicable to state action by incorporation through the Fourteenth Amendment. *Everson v. Bd. of Educ. of Ewing Twp.*, 330 U.S. 1, 8 (1947). "The right to exercise religious practices and beliefs does not terminate at the prison door[,]" *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir.1987) (citing *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987)), but a prisoner's right to free exercise of religion "is necessarily limited by the fact of incarceration," *Ward v. Walsh*, 1 F.3d 873, 876 (9th Cir.1993) (citing *O'Lone*, 482 U.S. at 348). The Free Exercise Clause of the First Amendment is "not limited to beliefs which are shared by all of the members of a religious sect." *Holt v. Hobbs*, --- U.S. ---, 135 S.Ct. 853, 862 (2015) (quoting *Thomas v. Review Bd. of Indiana Employment Security Div.*, 450 U.S. 707, 715-716 (1981)).

A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion. *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015) citing *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir.1987), aff'd sub nom. *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989). "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir.2013) (quoting *Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 988 (9th Cir.2006) (internal quotation marks and alterations omitted)).

"To ensure that courts afford appropriate deference to prison officials," the Supreme Court has directed that alleged infringements of prisoners' free exercise rights be "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone*, 482 U.S. at 349. The challenged conduct "is valid if

it is reasonably related to legitimate penological interests." *Id*. (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). "[T]he availability of alternative means of practicing religion is a relevant consideration" for claims under the First Amendment. *Holt*, 135 S.Ct. at 862.

Defendant argues that she did not violate Plaintiff's First Amendment rights by denying him kosher meals or preventing him from attending religious services. (Doc. 50-1, pp. 10-12.) Defendant contends she did not substantially burden Plaintiff's practice of religion because, as her evidence shows, she did not have the authority to authorize or rescind entry into the JKDP, and did not deny Plaintiff entry into this program. (DUF Nos. 10, 16.) Defendant correctly shows that, California Code of Regulations, title 15, section 3054.2(g), designates that "[a] Jewish Chaplain shall: (1) Determine inmate entry into the Jewish kosher diet program, oversee the program, and determine Jewish inmate compliance violations."

Defendant contends that Plaintiff based his FAC on the premise that Defendant denied his request for Kosher meals. (DUF No. 5.) However, Defendant's evidence shows she is not a Jewish Chaplain and did not have the authority to authorize a Jewish Kosher diet. (DUF Nos. 2, 10.) Defendant's evidence shows she never met with Plaintiff and did not deny his JKDP request at KVSP. (DUF Nos. 7, 16.) She merely communicated decisions made by others to Plaintiff through CDCR 22 forms. (DUF Nos. 15, 18.) Defendant has shown that Plaintiff's claim pertaining to the denial of Kosher meals cannot be attributed to her. *See Williams v. Cate*, No. 1:09-cv-00468-LJO-JLT, 2012 WL 3561791 at *4-5 (E.D. Cal. Aug. 17, 2012) (granting summary judgment for defendant, a community resources manager, on First Amendment claim because defendant lacked the authority to deny plaintiff kosher meals); *Thompson v. Boldt*, No. CV 11-1535, 2015 WL 263478 at *11 (C.D. Cal. Jan. 21, 2015) (granting summary judgment for two defendants on the basis that there was no evidence any meal-delivery issues were attributable to defendants' conduct as they were not involved in the actual distribution of meals to inmates).

Similarly, Defendant contends, she did not deny Plaintiff access to Jewish services. (DUF No. 25.) Defendant's evidence shows the Chaplains on each yard were responsible for organizing, scheduling, and conducting worship services and religious programs appropriate to their faith, and maintained sign-in lists. (DUF No. 22.) Defendant's evidence shows she did not

7

have the ability to place or remove an inmate from a religious service sign-in list. (DUF Nos. 21, 22.) Likewise, Defendant's evidence shows that she did not receive any request for a religious service accommodation or request to hold a religious event from Plaintiff, (DUF No. 23), and she never denied Plaintiff the ability to attend Jewish services, (DUF No. 25). Defendant's evidence shows she merely responded to CDCR 22 forms regarding Plaintiff's status on a religious service list which was compiled and maintained by others. (DUF No. 24.)

The Court finds that Defendant has met her initial burden of informing the Court of the basis for his motion and identifying admissible evidence to demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). As stated above, in attempting to establish the existence of this factual dispute, Plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of his contention that a dispute exists. Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11; *First Nat'l Bank,* 391 U.S. at 289; *Strong v. France*, 474 F.2d 747, 749 (9th Cir. 1973).

In his opposition, Plaintiff repeatedly argues that because KVSP did not have a Chaplain, as Community Resource Manager, Defendant was the Warden's designee with the responsibility to oversee the JKDP. (Doc. 65, pp. 7, 9, 16-17, 60.) However, the evidence Plaintiff submitted does not support any such finding. Plaintiff's evidence shows that section 3054.2(a) of Title 15 requires inmates desiring to participate in the JKDP to submit a Form 3030 to any Chaplain who may either approve the request, or refer it to the Religious Review Committee (RRC) for determination. (Doc. 65, pp. 46.) Though Plaintiff submits various sections of the DOM and of Title 15, none of them provide any basis to find that the Community Resource Manager becomes the Warden's designee to oversee the JKDP when a facility does not have a Chaplain. (*See* Doc. 65, pp. 31-33, 44, 46-48, 53, 56-57.)

The 2016 version of subsection 3054.4(d) which Plaintiff submitted, indicates that an inmate who desires to withdraw from a Religious Diet Program may submit a cancellation request to the Community Resources Manager. (Doc. 65, p. 56.) Likewise, the 2016 version of

8

subsection 3054.4(b)(5) which Plaintiff also submitted indicates that when an inmate has been approved to participate in a Religious Diet Program, the facility Chaplain or designated representative of the RRC must distribute a completed Form 3030 and Form 3030-A to the Community Resources Manager within three working days. (Doc. 65, p. 57.) Neither document provides any basis to support Plaintiff's conclusion that a Community Resources Manager becomes the Warden's designee, to decide whether an inmate may participate in the Religious Diet Program when the facility does not have a Chaplain. To the contrary, both sections underscore Defendant's argument that, as the Community Resources Manager, she was merely the messenger or conduit for inmates of decisions made persons with ecclesiastical vocations and vice versa.

The Court finds unavailing Plaintiff's argument that Defendant's signature on the First Level Review of Plaintiff's inmate appeal shows that Defendant denied his JKDP requests. To the contrary, the First Level Response to Plaintiff's appeal KVSP-O-14-01200 which Defendant signed, was both a grant and a denial of the issue raised therein. (Doc. 65, pp. 26-27.) It was granted in that Plaintiff's Form 3030 would be "forwarded to the Jewish Chaplain for consideration" and was denied in as much as Plaintiff's request for the JDKP could not be considered until reviewed by the Jewish Rabbi." (*Id.*) This appeal neither states nor gives any basis to imply that Defendant denied Plaintiff's request to participate in the JKDP, or that Plaintiff's request was or would be denied. (*Id.*) Nor does this appeal provide any basis to find that Defendant was or would be involved in the decision process of Plaintiff's JKDP request. Rather, this appeal also supports Defendant's contention that she was merely an intermediary of Plaintiff's request to ecclesiastical entities, who made the decisions of which Plaintiff complains.

Similarly, the Court finds that Defendant's signature on Plaintiff's CDCR 22 Forms does not equate to involvement in the decision-making process. Plaintiff submitted a CDCR 22 Form that he signed on January 25, 2016 in which he indicated that he thought he was being called for Catholic services, but he was called for Jewish and Catholic services, which he requested be corrected to being placed on "the Jewish list." (Doc. 65, p. 21.) Defendant responded to Plaintiff's request by indicating there was "no regular Chaplain on Custody D yet. We will try to

9

get you on a list." Plaintiff also submitted two copies of a CDCR 22 Form he signed on September 9, 2014, in which he wrote to Chaplain Bowman indicating that he had submitted everything and asking for confirmation of his "application or deny in communication with the Rabbi." (Doc. 65, pp. 22, 23, 29.) Defendant provided the September 15, 2014 staff response in which she wrote, "you have been denied kosher meals." (*Id.*) Even leniently construed, nothing in Defendant's response implies that she made or was involved in the denial, as opposed to merely relaying the decision denying Plaintiff's kosher meal request. Further, a CDCR 22 Form that Plaintiff signed on October 8, 2017, shows that Plaintiff directed it to Chaplain Krantz, who made the decision to grant Plaintiff's request after he "got copies of what [he] needed" and indicated that Plaintiff's JKDP "should start within a couple of days." (Doc. 65, p. 30.)

Plaintiff repeatedly argues that Defendant is responsible for the acts of subordinates which she knew violated Plaintiff's constitutional rights, but failed to rectify. (Doc. 65, pp. 7, 8, 9, 10, 13, 14.) Yet Plaintiff provides neither evidence nor argument to show that Community Resource Managers are superior officers of Chaplains and Rabbis and the Court finds none -- particularly given the ecclesiastical nature of the latter's positions. *See Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 925-26 (9th Cir. 2011) (holding that ecclesiastical decision made by religious persons are not public functions for state action). Plaintiff does not dispute DUF No. 21 which states that Chaplains on each yard are responsible for organizing, scheduling, and conducting worship services and religious programs appropriate to their faith and maintain sign-in lists. (Doc. 65, p. 14.) Plaintiff argues that Defendant's response on a CDCR 22 Form that "We will try and get you on a list" is an admission of her authority on the issue. (*Id.*) However, at most, leniently construed in Plaintiff's favor, the quoted verbiage shows an intent to make efforts such as making inquiries of the Chaplain/Rabbi to get Plaintiff on a list for religious services, but does not show that Defendant had the power/authority to do so on her own or to override contrary ecclesiastical decisions made by a Chaplain/Rabbi. Further, Plaintiff's own evidence shows that only Chaplains or Rabbis approved or denied his requests to be placed on the Religious Diet Program. (Doc. 65, pp. 40-43, 49-52.) Plaintiff thus fails to show that Defendant had supervisory authority over subordinates who made decisions which infringed on Plaintiff's

1 constitutional rights which Defendant failed to correct.

Plaintiff also contends that Defendant's production of documents, apparently in response to Plaintiff's discovery request, shows that there are several weekly Jewish services at KVSP which he argues Defendant could have allowed him to attend. (Doc. 65, pp. 6, 8, 15.) However, aside from failing to show that Defendant had any authority over Plaintiff's inclusion/exclusion on the list to attend Jewish services, Plaintiff failed to submit any such discovery responses with his opposition.[5]

Plaintiff contends that KVSP's utilization of the neighboring institution's Jewish Chaplain, or the Department of Adult Institution's Jewish Chaplain, Paul Shleffar, to oversee entrance into the JKDP, as stated in DUF No. 10, was improper since "Rabbi Shleffar was in another city entirely, 'Sacramento, CA.'" (Doc. 65, p. 11-12.) Plaintiff argues that Rabbi Shleffar was required to interview Plaintiff. (*Id.*) Plaintiff cites section 3054.4(b)(1) which requires a Jewish Chaplain or ***designee*** to interview the inmate requesting a religious diet. (Doc. 65, p. 12.) Plaintiff's own evidence reflects that, at least for his inmate appeal on the issue, he was interviewed by Chaplain R. Alec and after that interview, the appeal was partially granted by Defendant and an associate warden who indicated that Plaintiff's Form 3030 would be forwarded to the Jewish Chaplain for consideration. (*See* Doc. 65, pp. 26-27.) Thereafter, Rabbi Shleffar denied Plaintiff's request for a JKDP. (*Id.*, at p. 52.) Plaintiff did not submit evidence to show that Rabbi Shleffar was required to personally interview Plaintiff on his JKDP request and not a Chaplain designee. To the contrary, evidence Plaintiff submitted, showing that he was previously and subsequently approved to for the JKDP, reflect signatures from Chaplains, (*id.*, pp. 40-43, 49-50.) Further, Defendant's evidence shows that Rabbi Shleffar denied Plaintiff's JKDP request based on information in Plaintiff's C-File that stated Plaintiff is Baptist. (Doc. 50-2, pp. 28-29.) Plaintiff submits no argument nor evidence to find that Plaintiff's C-File did not, at that time, reflect that he was Baptist, or that it reflected he was Jewish. Plaintiff does not provide any basis for the Court to find that Rabbi Shleffar was required to personally interview Plaintiff, and that it

---

[5] The Court informed Plaintiff of the requirement that all papers referred to in support of his opposition must be included with his opposition and served on the opposing party. (Doc. 51, p. 2, fn. 2.)

11

1 was Defendant's duty to ensure that the interview took place.

Plaintiff argues that he should not have been denied the JKDP at KVSP because he was approved as a Jewish Hebrew to receive a Kosher diet at the facility where he was housed just prior to transfer to KVSP. (Doc. 65, pp. 5, 8, 13.) Plaintiff's evidence shows that he was approved for the JKDP in 2009 and 2011, while he was housed at the Lerdo Pre-trial Facility. (*Id.*, pp. 41, 42.) Plaintiff also submitted an October of 2016 version of section 3054(c), which states that "Inmates who are transferred shall have the ability to continue participating in their current Religious Diet Program at the receiving institution, barring medical needs or other extraordinary circumstances." (*Id*, p. 44.) There is no evidence before the Court as to the precise wording of this section in 2014, when the events Plaintiff's claims began. However, even if the Court assumes that this section was in effect in 2014, Plaintiff provides no evidence to show that Defendant had any authority or ability to approve Plaintiff for the JKDP or Jewish services on a continuing basis because of approval at a prior facility.

The Court does not consider the declarations of other inmates regarding the sincerity of Plaintiff's religious beliefs, (Doc. 65, p. 35, Bennett Decl.), and their experiences at KVSP regarding approval for religious diets, (*id.*, p. 36, Gonzales Decl., p. 37, Bell Decl. They contain conclusions and are devoid of factual evidence. *See Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 497-98 (9th Cir. 2015) (a court may discount testimony that "states only conclusions and not facts that would be admissible evidence"); *see Rivera v. AMTRAK*, 331 F.3d 1074, 1078 (9th Cir. 2003) ("Conclusory allegations unsupported by factual data cannot defeat summary judgment."). Further, aside from limited exceptions, none of which apply here, statements in other inmates' declarations regarding their interactions with Defendant is inadmissible to prove that Defendant acted in accordance with a character or character trait towards Plaintiff. Fed. R. Evid. 404. The inmate declarations Plaintiff submits need not be considered since they provide only general conclusions and improper character evidence.

The Court finds that Defendant is entitled to summary judgment on Plaintiff's claim that Defendant interfered with and/or prohibited his access to Kosher meals and Jewish services as Plaintiff has not established the existence of a factual dispute on this claim. Fed. R. Civ. P. 56(e);

*Matsushita*, 475 U.S. at 586 n.11; *First Nat'l Bank,* 391 U.S. at 289; *Strong*, 474 F.2d at 749.

### C. RLUIPA

A prisoner's ability to freely exercise his religion is also protected by the Religious Land Use and Institutionalized Persons Act. 42 U.S.C. § 2000cc-1. RLUIPA protects " 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief,' §2000cc-5(7)(A), but of course, a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." *Holt*, 135 S.Ct. at 862 (citing *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. ---, 134 S.Ct. 2751, 2774, n. 28 (2014)). RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc-5(7)(A). Like the Free Exercise Clause of the First Amendment, RLUIPA is "not limited to beliefs which are shared by all of the members of a religious sect." *Holt*, 135 S.Ct. at 862 (quoting *Thomas*, 450 U.S. at 715-716).

Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government shows that the burden is "in furtherance of a compelling government interest" and "is the least restrictive means of furthering . . . that interest." 42 U.S.C. § 2000cc-1(a) (2012).

A "substantial burden" occurs "where the state . . . denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir.2005) (alteration in original) (quotation omitted). RLUIPA provides greater protection than the First Amendment's alternative means test. *Holt*, 135 S.Ct. at 862. "RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise . . . , not whether the RLUIPA claimant is able to engage in other forms of religious exercise." *Id.* Plaintiff's allegations that Wegman and Chaplain Bowman intentionally deprived him of Kosher meals and access to Jewish services, as discussed under the First Amendment, suffice to show that their actions substantially burdened his religious exercise.

"Context matters in the application" of the compelling governmental interest standard.

*Cutter v. Wilkinson*, 544 U.S. 709, 722-23 (2005) (alteration in original) (internal quotation and citation omitted). "RLUIPA contemplates a " ' "more focused" ' " inquiry and " ' "requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person' -- the particular claimant whose sincere exercise of religion is being substantially burdened." ' " *Holt*, 135 S.Ct. at 863 (quoting *Hobby Lobby*, 134 S.Ct., at 2779 (quoting *Gonzales v. O Centro Espirita Beneficente Unio do Vegetal*, 546 U.S. 418, 430-431 (2006) (quoting § 2000bb–1(b)))). RLUIPA requires courts to " 'scrutiniz[e] the asserted harm of granting specific exemptions to particular religious claimants' " and "to look to the marginal interest in enforcing" the challenged government action in that particular context. *Hobby Lobby*, 134 S.Ct., at 2779 (quoting *O Centro*, 126 S.Ct. 1211; alteration in original).

"The least-restrictive-means standard is exceptionally demanding," and it requires the government to "sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y]." *Hobby Lobby*, 134 S.Ct., at 2780. "[I]f a less restrictive means is available for the Government to achieve its goals, the Government must use it." *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 815 (2000). Damages claims are not available under the RLUIPA against prison officials in either their individual capacity, *Wood v. Yordy*, 753 F.3d 899 (9th Cir. 2014); nor in their official capacity because of sovereign immunity, *Sossamon v. Texas*, --- U.S. ---, 131 S.Ct. 1651 (2011); *Alvarez v. Hill*, 667 F.3d 1061, 1063 (9th Cir. 2012).

Defendant's evidence shows she did not have the authority to grant Kosher meals or regulate the religious services list, and she did nothing to interfere with Plaintiff's exercise of his religion. (DUF Nos. 10, 16, 21, 22, 25.) Plaintiff is no longer housed at KVSP and there is no reasonable expectation he will be returned to KVSP, and, prior to his transfer, Plaintiff was enrolled in the JKDP. (DUF Nos. 20, 28, 29.) Defendant correctly contends that Plaintiff's enrollment in the JKDP and subsequent transfer out of KVSP moots his injunctive relief claim. (Doc. 50-1, p. 14 (citing *Von Staich v. Hamlet*, No. 04-16011, 2007 WL 3001726, at *2 (9th Cir. Oct. 16, 2007) (unpublished) (under RLUIPA a claim for injunctive relief is moot when the plaintiff has received the relief requested in the complaint).) This meets Defendant's initial

burden of identifying admissible evidence to demonstrate the absence of a genuine issue of material fact on Plaintiff's claim under RLUIPA, shifting the burden to Plaintiff to establish a factual dispute. *Matsushita*, 475 U.S. at 586.

Plaintiff counters Defendant's argument that his RLUIPA claim was rendered moot when he was transferred out of KVSP by admitting that there is no reasonable expectation that he will return to KVSP, but arguing "there is still that possibility." (Doc. 65, p. 15.) Suggesting there is a mere possibility that an event will occur is insufficient to meet Plaintiff's burden on this issue. Plaintiff's request for relief to remedy his conditions of confinement for the time he was at KVSP was rendered moot on his transfer to RJD, where he remains. *See Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991).

Lastly, Plaintiff admits that he received Kosher meals at KVSP in 2017, before he was transferred to another facility. (Doc. 65, pp. 6, 8.) Nevertheless, Plaintiff argues that summary judgment may not be granted for Defendant on his claim under RLUIPA because he is entitled to punitive damages. (*Id.*) Plaintiff provides no legal authority to support this argument and the Court finds none. To the contrary, the Supreme Court and the Ninth Circuit have made it clear that monetary damages, of any sort, are not available under RLUIPA. *Sossamon*,131 S.Ct. 1651; *Jones*, 791 F.3d at 1031; *Wood*, 753 F.3d 899; *Alvarez*, 667 F.3d at 1063. Plaintiff's RLUIPA claim was rendered moot when he received Kosher meals and was transferred to another facility and Defendant is entitled to summary judgment thereon. Plaintiff fails to show that Defendant engaged in any activities, or failed to take corrective actions which allowed his religious rights to be violated, or that he is entitled to further relief under RLUIPA than he has already received. Given this, Defendant is entitled to summary judgment as Plaintiff fails to demonstrate "the existence of genuine issues for trial." *In re Oracle Corp.,* 627 F.3d at 387.

**D.    Fourteenth Amendment -- Equal Protection**

"The Equal Protection Clause requires the State to treat all similarly situated people equally." *Furnace v. Sullivan*, 705 F.3d 1021, 1030-31 (9th Cir. 2013) quoting *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir.2008) (citation omitted). This does not mean, however, that all prisoners must receive identical treatment and resources. *See Cruz*, 405 U.S. at 322 n. 2; *Ward v.*

1 *Walsh*, 1 F.3d 873, 880 (9th Cir. 1993); *Allen v. Toombs*, 827 F.2d 563, 568-69 (9th Cir. 1987).

To prevail on an Equal Protection claim brought under § 1983, a plaintiff must show either that he was intentionally discriminated against due to his membership in a protected class, *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005), or that similarly situated individuals were intentionally treated differently for no rational basis. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Squaw Valley Development Co. v. Goldberg*, 75 F.3d 936, 944 (9th Cir. 2004). The first step in determining whether prison officials violated an inmate's right to equal protection is to identify the relevant class to which he belonged. *See Thornton*, 425 F.3d at 1166. "The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified." *Id.* at 1167.

If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *San Antonio School District v. Rodriguez*, 411 U.S. 1 (1972); *Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir.2004); *SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002). To state an equal protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. *Village of Willowbrook*, 528 U.S. at 564.

Defendant's evidence shows that she has never met Plaintiff. (DUF No. 7.) Defendant points out that Plaintiff alleged in his FAC that only Chaplain Bowman's actions were racially motivated, (DUF No. 26), and that there are no allegations in the FAC that she made decisions based on Plaintiff's race. When asked in deposition how Defendant treated him differently, Plaintiff merely stated because "other inmates have been approved," referring to entry into the JKDP. (DUF No. 27.) Defendant's evidence shows that CDCR policy required Jewish inmates be approved for the JKDP by and through a Jewish Chaplain. (DUF No. 10.) It also shows that the Chaplain on each yard was responsible for overseeing religious services on the yard. (DUF No. 22.) The evidence shows Defendant was neither involved in nor had the authority to deny

Plaintiff entry into the JKDP, or his place his name on any religious services list. (DUF Nos. 10, 16, 21, 25.) Defendant merely communicated decisions made by others to Plaintiff through CDCR 22 forms. (DUF Nos. 15, 18, 24.) The Court finds that Defendant has met her burden to demonstrate the absence of a genuine issue of material fact on Plaintiff's claim under the Equal Protection Clause, shifting the burden to Plaintiff to establish a genuine issue of material fact. *Matsushita,* 475 U.S. at 586.

To begin with, Plaintiff does not submit any evidence to show that Defendant intentionally discriminated against him. To the contrary, Plaintiff merely asserts that when he met with the Chaplain, the Chaplain saw that Plaintiff was African American. (Doc. 65, pp. 6-7.) Subsequently, Plaintiff's documents were forwarded to Defendant "where progress came to a stop." (*Id.*) This does not meet Plaintiff's burden of proof. Plaintiff fails to provide any evidence or legal authority upon which to conclude, particularly in light of the evidence discussed both previously, that Defendant engaged in intentionally discriminatory acts which deprived Plaintiff of a religious diet and services. The Court finds none. Defendant is entitled to summary judgment on Plaintiff's claim under the Equal Protection Clause. Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11; *First Nat'l Bank,* 391 U.S. at 289; *Strong*, 474 F.2d at 749. Defendant's qualified immunity arguments need not be addressed as she is entitled to summary judgment on the merits of all of Plaintiff's claims.

## IV. Conclusions and Recommendations

As set forth herein, this Court finds that Defendant has met her burden and her motion for summary judgment should be granted. Accordingly, the Court **RECOMMENDS**:

    (1) that Defendant C. Wegman's Motion for Summary Judgment, (Doc. 50), should be **GRANTED**; and

    (2) that the Clerk of the Court be directed to enter judgment against Plaintiff and for Defendant C. Wegman, and that this action be closed.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within 21 days** after being served with these Findings and Recommendations, the parties may file written

objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are notified that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **February 1, 2019**              **/s/ Jennifer L. Thurston**
                                                                    UNITED STATES MAGISTRATE JUDGE